UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

DAVID PUCK
Individually and on behalf of others similarly situated

 Plaintiff

-vs-
                 Case No.
                 Hon.
                 CLASS ACTION COMPLAINT

CAVALRY SPV I, LLC,

 Defendant

## COMPLAINT & JURY DEMAND

*David Puck states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

2. This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit is David Puck who resides in Eaton County.

4. The Defendant to this lawsuit is Cavalry SPV I, LLC ("Cavalry") which is a corporation doing business in Michigan to collect and enforce defaulted debts.

### Venue

5. The transactions and occurrences which give rise to this action occurred in Eaton County.

1

6. Venue is proper in the Western District of Michigan.

## General Allegations

7. Some time prior to January 27, 2014, Cavalry engaged the law firm of Rausch, Sturm, Israel, Enerson, & Hornick ("RSIEH") to collect a debt allegedly owed by David Puck through litigation.

8. That debt originated with FIA Card Services, a subsidiary of Bank of America organized under the law of Delaware.

9. Mr. Puck had opened that account in or around calendar year 2007.

10. Mr. Puck made his last payment on that account on November 27, 2010.

11. Delaware law limits the time for bringing a claim on agreements like the one between Mr. Puck and FIA Card Services to three years from the breach of agreement.

12. The FIA Card Services credit card agreement with Mr. Puck incorporated the provisions of Delaware law by reference, and governed the contract and any litigation over it.

13. When Cavalry purchased Mr. Puck's FIA Card Services account, Cavalry stepped into the shoes of FIA Card Services, and took only those rights that existed at the time of the transfer.

14. As such, Delaware law governed the agreement between Mr. Puck and FIA Card Services, and the account that Cavalry purchased from FIA Card Services.

15. The statute of limitations on Mr. Puck's FIA Card Services account expired on November 27, 2013.

16. Notwithstanding the fact that Delaware law required Cavalry to bring suit within three years of the default by Mr. Puck, Cavalry – acting through RSIEH – initiated suit on the account on February 25, 2014.

17. Cavalry had received copies of "electronic business records" concerning Mr. Puck's FIA Card Services account in connection with its purchase of Mr. Puck's account.

18. At the time that Cavalry brought suit against Mr. Puck, Cavalry knew or had reason to know that Mr. Puck's last date of payment was November 27, 2010.

19. According to its own records, Cavalry knew or had reason to know that the suit against Mr. Puck was time-barred under the Delaware statute of limitations.

20. At the time that Cavalry brought suit against Mr. Puck, Cavalry knew or had reason to know that Cavalry's claim on the account was time-barred under Delaware law.

21. At the time that Cavalry brought suit against Mr. Puck, Cavalry possessed no factual information that would have extended any applicable statute of limitations beyond November 27, 2013.

22. In spite of the information available to them, Cavalry brought suit against Mr. Puck on an account beyond the applicable three year limitations period.

23. Mr. Puck has suffered damages and sustained a loss as a result of the actions of Cavalry and RSIEH.

### Practices of Cavalry

24. Cavalry purchases defaulted debts from credit card issuers.

25. Those defaulted debts purchased by Cavalry regularly include debts originated by FIA Card Services.

26. When it purchases these debts, Cavalry negotiates not only the terms and conditions for the transfer of these debts, but also the data that the seller will make available to Cavalry.

27. As is industry standard, Cavalry regularly negotiates for the purchase of data that includes the date on which the originator charged off the debt or date of last payment.

28. Thus, at the time of purchase Cavalry regularly receives sufficient information to know whether the statute of limitations has run on any debt that it seeks to enforce.

29. Cavalry regularly acquires debts on which the applicable statute of limitations has run.

30. Cavalry is knowledgeable about the relevant statutes of limitations applicable to the debts that it acquires.

31. Cavalry regularly forwards debts on which the statute of limitations has expired to attorneys like RSIEH for litigation.

32. Cavalry is knowledgeable about the prohibitions under FDCPA case law establishing that the initiation of litigation on a time-barred debt constitutes a violation of the FDCPA.

33. Cavalry regularly authorizes its attorneys to initiate suit on time-barred debts.

## Class Allegations

34. Mr. Puck brings this action on behalf of himself and a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

35. The class consists of the following members.

36. **Class 1– Cavalry FDCPA Class**

    a. All residents of Michigan against whom Cavalry initiated suit within the preceding year;

    b. On an account originating with FIA Card Services;

    c.    Whose account was charged off more than three years prior to the initiation of suit by FIA Card Services.

37. **Class 2– Cavalry Michigan Class**

    a.    All residents of Michigan against whom Cavalry initiated suit within the preceding six years;

    b.    On an account originating with FIA Card Services;

    c.    Whose account was charged off more than three years prior to the initiation of suit by FIA Card Services.

38. There are questions of law and fact which are common to all members of the class, which questions predominate over any question affecting only individual class members:

    a.    Whether Cavalry initiated time-barred suits against Michigan debtors.

    b.    Whether Cavalry purchases time-barred debts for litigation purposes.

    c.    Whether Cavalry initiates suits on time-barred debts.

    d.    Whether Cavalry knows that its debts are time-barred at the time it initiates litigation on those debts.

39. Mr. Puck's claims are typical of the claims of the class members. All are based on the same legal and remedial theories, namely FDCPA, Michigan Collection Practices Act and Michigan Occupational Code.

40. Mr. Puck will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to claims stated herein. He is similarly situated with, and has suffered similar injuries as, the members of the class he seeks to represent.

41. Mr. Puck has retained counsel experienced in handling class action suits involving unfair business practices and consumer law.  Neither the named plaintiff nor his counsel have any interest which might cause them not to vigorously pursue this action.

42. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

43. The class is so numerous as to make it impracticable to join all members of the class as plaintiffs. Based upon the investigation of counsel, the number of class members is estimated to be in excess of 100 persons.

### COUNT I – Fair Debt Collection Practices Act (Cavalry)

44. Mr. Puck incorporates the preceding allegations by reference.

45. At all relevant times Cavalry – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

46. Cavalry is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

47. At all times relevant to this complaint, Cavalry sought to collect a "consumer" debt from Mr. Puck.

48. Cavalry's actions to collect this alleged debt from Mr. Puck violated the provisions of the FDCPA including, but not limited to 15 U.S.C. § 1691d, 1691e and 1691f.

49. Mr. Puck suffered damages as a result of these violations of the FDCPA.

### COUNT II – Michigan Occupational Code as alternative to claims under the Michigan Collection Practices Act

50. Mr. Puck incorporates the preceding allegations by reference.

6

51. Cavalry is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

52. Mr. Puck is a debtor as that term is defined in M.C.L. § 339.901(f).

53. Cavalry's actions to collect from Mr. Puck violated the MOC including but not limited to the following M.C.L. § 339.915.

54. Mr. Puck suffered damages and a loss as a result of these violations of the MOC.

55. These violations of the MOC were willful.

### COUNT III – Michigan Collection Practices Act as alternative to claims under the Michigan Occupational Code

56. Mr. Puck incorporates the preceding allegations by reference.

57. Cavalry is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

58. Cavalry's actions to collect from Mr. Puck violated the MCPA including but not limited to M.C.L. § 445.252.

59. Mr. Puck suffered damages and a loss as a result of these violations of the MCPA.

60. These violations of the MCPA were willful.

### Demand for Jury Trial

61. Plaintiff demands trial by jury in this action.

### Demand For Judgment for Relief

62. *Accordingly, Mr. Puck requests that the Court grant:*

    a.   Actual damages.

    b.   Statutory damages.

    c.   Treble damages.

  d. *A declaration as to the legality of Cavalry's practices, and an injunction against further violation.*

  e. *Statutory costs and attorney fees.*

         Respectfully Submitted,

         <u>By:  s/ Ian B. Lyngklip</u>
         Ian B. Lyngklip (P47173)
         LYNGKLIP & ASSOCIATES
         CONSUMER LAW CENTER, PLC
         Attorney For David Puck
         24500 Northwestern Highway, Ste. 206
         Southfield, MI 48075
         (248) 208-8864
         Ian@MichiganConsumerLaw.Com

Dated: February 23, 2015